**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VIRGINIA VALENZUELA,      )   NO. EDCV 12-1183 SS
                            )
            Plaintiff,   )
                            )
        v.             )
                            )   **MEMORANDUM DECISION AND ORDER**
CAROLYN W. COLVIN,         )
Acting Commissioner of the   )
Social Security Administration, )
                            )
           Defendant.   )
_____)

**I.**

**INTRODUCTION**

Virginia Valenzuela ("Plaintiff") seeks review of the Commissioner of the Social Security Administration's ("the Commissioner" or the "Agency") decision denying her disability benefits.[1]  The parties have consented, pursuant to 28 U.S.C. § 636, to the jurisdiction of the

---

[1]  The Court notes that Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Carolyn W. Colvin for Michael J. Astrue as the defendant in this action.

undersigned United States Magistrate Judge.   For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On February 13, 2008, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Administrative Record ("AR") 108, 111).  Plaintiff alleged disability beginning January 11, 2008 due to limitations from asthma, sleep apnea, diabetes, high blood pressure and obesity. (AR 134).  The Agency denied Plaintiff's DIB and SSI applications on April 1, 2008, and after reconsideration, on July 2, 2008.  (AR 46-49, 54-59).

Plaintiff then filed a request for hearing before an Administrative Law Judge ("ALJ").  (AR 61-68).  The hearing took place on August 27, 2009, with ALJ Mason D. Harrell, Jr. presiding. (AR 20-41).   The ALJ issued an unfavorable decision on November 17, 2009, finding Plaintiff capable of performing a limited range of sedentary work.  (AR 7-19). Plaintiff then filed a request for review of the ALJ's decision before the Appeals Council on January 5, 2010.  (AR 5).  On July 17, 2010, the Appeals Council denied Plaintiff's request and the ALJ's decision became the final decision of the Commissioner.  (AR 1-3).

On August 25, 2010, Plaintiff appealed the Appeals Council's decision by seeking judicial review in this Court.  On June 28, 2011, this Court remanded the matter to the Commissioner for further proceedings.  (AR 541-53).  Pursuant to this Court's remand order, the

Appeals Council instructed the ALJ to consider all of the relevant medical evidence and give proper weight to the treating physician's opinion, further assess Plaintiff's credibility, and obtain further testimony from a vocational expert. (AR 493).

After this Court's January 6, 2012 order remanding the case for further proceedings, a second hearing was held before a different ALJ. (AR 558). On March 22, 2012, ALJ Duane D. Young issued a partially favorable decision, finding that Plaintiff's asthma condition met the requirements of Listing 3.03(B) between January 31, 2006 and December 31, 2007, rendering her disabled during that period of time. (AR 497-98). The ALJ also found medical improvement by January 1, 2008, the date Plaintiff's disability ended. (AR 500). Subsequent to January 1, 2008, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work, and therefore could return to her past relevant work. (AR 500, 504). Plaintiff filed the instant action on July 20, 2012.

### III.

#### FACTUAL BACKGROUND

Plaintiff was born March 27, 1966. (AR 129). Plaintiff completed school through the twelfth grade. (AR 139). Plaintiff has a history of asthma, obesity, sleep apnea, hypertension, and diabetes. The medical record shows that Plaintiff was primarily treated by Tarek Z. Madhi, M.D. at Parkview Community Hospital. However, several other physicians from the Riverside Family Physicians group saw Plaintiff on

3

several occasions during the relevant time periods.  (AR 172-268, 269-390, 391-446).

**A.   Medical History**

On December 22, 2005, Plaintiff went to the emergency room complaining of shortness of breath.  (AR 350).  Intake notes show Plaintiff had an upper respiratory infection that she had been treating with antibiotics for four days.  (Id.).  Plaintiff complained that her nebulizer was not helping her breathing.  (Id.).  Plaintiff was diagnosed with an asthma exacerbation and discharged in stable condition.  (AR 353).  Medical notes from December 30, 2005 indicate that Plaintiff received medical treatment for a bad cough and was diagnosed with asthmatic bronchitis.  (AR 191).  Plaintiff's weight was then in excess of 350 pounds.  (Id.).

On May 7, 2006, Plaintiff was admitted to the emergency room for shortness of breath, which she had been experiencing for four days.  (AR 371-73).  Plaintiff was diagnosed with exercise-induced asthma.  (Id.).  Again, on May 8, 2006 Plaintiff presented with an asthma attack.  (AR 187).  Dr. Madhi noted that Plaintiff could walk approximately fifteen minutes before experiencing shortness of breath.  (Id.).  Plaintiff was using Advair to control her asthma and Albuterol, through a nebulizer, to control symptom flares.  (Id.).  Plaintiff stated that she used the nebulizer three to four times a day, but that it did not help.  (Id.).  Plaintiff was then readmitted to the emergency room at Parkview Community Hospital on May 24, 2006 with another asthma attack and again on May 31, 2006 for asthma and bronchitis.  (AR 366, 181-82).

On July 18, 2006, Plaintiff was diagnosed with bronchitis at a follow-up appointment. (AR 237). On August 9, 2006, Plaintiff visited Dr. Madhi after participating in a sleep study. (AR 175). Dr. Madhi directed Plaintiff to continue using Advair and Albuterol at home. (Id.). On September 27, 2006, Plaintiff allegedly injured her right knee and had pain in her ankle. (AR 173, 378). A week and a half later, Plaintiff had X-rays and a CT scan. (AR 195-98). The tests revealed that there was no fracture. (Id.). However, there was some soft tissue swelling. (Id.).

On January 5, 2007, Plaintiff met with Dr. Madhi for chronic asthma. (AR 231). Dr. Madhi noted that Plaintiff became short of breath walking two blocks. (Id.). Two days later, on January 7, 2007, Plaintiff presented to the emergency room with severe shortness of breath. (AR 207). Plaintiff was diagnosed with an asthma exacerbation and was put on oxygen by Amiksha Patel, M.D. (Id.). On January 9, 2007, Plaintiff was discharged. (AR 203). Dr. Madhi instructed Plaintiff to take Albuterol four times a day as needed through a hand-held nebulizer, take one puff of Advair twice a day and follow up in a week. (AR 203-04). Further notes show Plaintiff was instructed to lose weight. (AR 203).

On April 24, 2007, Plaintiff went to the emergency room with shortness of breath, which had been increasing in severity for one week. (AR 203). Neither Plaintiff's nebulizer, nor the several treatments she received on intake, improved her condition. (Id.). Plaintiff was diagnosed with an asthma exacerbation. (Id.).

1    Nonetheless, Dr. Madhi's notes from May 7, 2007 show that Plaintiff
2    was doing well and that her asthma was stable.  (AR 225-26).  On July
3    27, 2007, Plaintiff reported to the emergency room with left upper chest
4    pain.  However, a heart attack was ruled out after several tests and
5    Plaintiff was discharged three days later, pain free.  (AR 295).

6

7    Plaintiff went to the emergency room on November 28, 2007.  (AR
8    441).  Plaintiff was diagnosed with asthma and bronchitis and discharged
9    the same day.  (AR 443).  On December 2, 2007, Plaintiff returned to the
10   emergency room with a moderate cough.  (AR 315).  Dr. Madhi diagnosed
11   Plaintiff with an asthma exacerbation, again discharging her on the same
12   day.  (AR 317).

13

14   On December 31, 2007, Plaintiff went to the emergency room for a
15   laceration to the head.  (AR 326).  Plaintiff's respiration was "even
16   and unlabored," her lungs were clear, and there were no signs of
17   respiratory distress.  (Id.).  CT scans confirmed that there was no
18   fracture or subluxation of the knee.  (AR 297).

19

20   Plaintiff returned January 2, 2008 to the emergency department for
21   an examination of her head wound and knee.  (AR 331).  Plaintiff was
22   discharged in stable condition.  (Id.).  Plaintiff had "no new
23   complications or complaints."  (AR 332).  On January 7, 2008, Plaintiff
24   had a routine appointment with Dr. Madhi for her diabetes.  (AR 220).
25   Dr. Madhi advised Plaintiff to engage in regular aerobic activity, such
26   as brisk walking, for at least thirty minutes a day, most days of the
27   week.  (Id.).  Plaintiff met with her primary physician, Dr. Madhi,
28

again on March 19, 2008.  (AR 468).  Dr. Madhi advised Plaintiff to engage in regular aerobic activity.  (Id.).

Plaintiff saw orthopedic surgeon, Stephen P. Suzuki, M.D., on March 27, 2008, regarding her December 2007 knee injury.  (AR 447).  Dr. Suzuki diagnosed Plaintiff with traumatic chondromalacia patella, or swelling of the underside of the patella.  (Id.).  Dr. Suzuki prescribed over-the-counter, non-steroidal anti-inflammatory medications, a home exercise program with ice, and physical therapy.  (Id.).

On April 21, 2008, Plaintiff saw Dr. Madhi for diabetes.  (AR 470). Plaintiff was described as "well appearing" and "in no distress."(Id.). Dr. Madhi advised Plaintiff to engage in regular brisk aerobic physical activity and requested a follow up in one month for a blood pressure check.  (AR 471).  Plaintiff saw Dr. Madhi for hypertension on June 9, 2008.  (AR 472).  Again, Plaintiff was "well appearing" and "in no distress."  (Id.).  Dr. Madhi emphasized the importance of exercising for a half an hour or more most days of the week and encouraged Plaintiff to adjust her diet.  (AR 472-73).

On September 19, 2008, Plaintiff saw Dr. Madhi for spontaneous vertigo.  (AR 474).  Dr. Madhi told Plaintiff the illness was not serious, but also that she should avoid working at heights.  (Id.). Additional notes from Plaintiff's visit with Dr. Madhi show that Plaintiff "[had not] been checking [her blood] sugars much".  (Id.).

Nearly three months later, on January 13, 2008, Plaintiff had an appointment for hypertension with Dr. Madhi.  (AR 476).  Dr. Madhi noted

that Plaintiff did not take her medications that day.  (Id.).  Dr. Madhi again stressed the importance of regular exercise and encouraged Plaintiff to adjust her caloric intake.  (AR 477).

**B.    State Agency Physicians**

On March 28, 2008, state agency physician Salvatorre Stella, M.D., assessed Plaintiff's residual functional capacity ("RFC").  (AR 456).  Dr. Stella concluded that Plaintiff had a light RFC.  (AR 458).  Dr. Stella determined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently.  (AR 453).  Dr. Stella further determined that Plaintiff could stand or walk with normal breaks for six hours in an eight hour workday and sit for a total of about six hours in an eight hour workday.  (Id.).  Dr. Stella also found that Plaintiff could occasionally climb ramps or stairs and balance, stoop, kneel, crouch, crawl, but never climb scaffolds or ropes.  (AR 454).  Furthermore, Dr. Stella determined that Plaintiff should avoid pulmonary irritants and heavy moving machinery.  (AR 455).  Finally, Dr. Stella found that the medical evidence did not support Plaintiff's use of a walker.  (AR 458).

On July 2, 2008, state agency physician R. Jacobs, M.D., reviewed Dr. Stella's assessment of Plaintiff's RFC on reconsideration.  (AR 460).  Plaintiff presented Dr. Jacobs with new medical records evidencing her chondromalacia patella.  (Id.).  Dr. Jacobs found that the new evidence did not change Plaintiff's RFC.  (Id.).  Accordingly, Dr. Jacobs affirmed Dr. Stella's original assessment.  (Id.).

**C.**  **Plaintiff's Testimony**

In Plaintiff's disability report, Plaintiff listed sleep apnea, diabetes, asthma, high blood pressure, and obesity as conditions that limited her ability to work. (AR 134). Furthermore, in Plaintiff's Asthma Questionnaire from June 2008, Plaintiff claimed to have asthma attacks twice a month. (AR 501). In the Questionnaire, Plaintiff also stated that it had been one year since she last went to the emergency room because of an asthma attack. (Id.).

In an Exertional Questionnaire from June 2008, Plaintiff stated that her typical day included washing dishes and helping with the laundry. (AR 162). Plaintiff also wrote that she could walk a quarter mile in ten to fifteen minutes, but would be short of breath, and that she could lift a plastic chair and carry two gallons of milk. (AR 162-63).

At Plaintiff's hearing on January 6, 2012, in front of ALJ Duane D. Young, Plaintiff testified that she began using a nebulizer in 2003 and that she used it three to six times a day. (AR 569-70). Plaintiff acknowledged using the nebulizer consistently since 2003. (AR 574, 576). Plaintiff further explained that she was able to control her asthma because she had lost over one hundred and twenty-five pounds over the past two and a half years. (AR 573-74). Additionally, Plaintiff's counsel recognized that prior to 2007 Plaintiff had been using an inhaler.

**D.    New Evidence**

Plaintiff submitted new evidence, not evaluated by either ALJ, to this Court.   The new evidence consists of medical records from April 2009 through April 2011. (Plaintiff's Exhibit A ("Pl's Ex. A").   On April 28, 2009, Plaintiff received treatment for an upper respiratory infection at Parkview Community Hospital. (Pl's Ex. A at 4).   Plaintiff was diagnosed with acute bronchitis.   (Id.).   On August 28, 2009, Plaintiff visited the doctor on account of heavy bleeding and was assessed with menorrhagia. (Pl's Ex. A at 6).   On October 29, 2009, Plaintiff saw Dr. Madhi to receive the flu vaccine and lab results. (Pl's Ex. A at 8).   At this time, Plaintiff had lost thirty five pounds and weighed three hundred and sixty-five pounds. (Id.).

In 2010, Plaintiff made five visits to Parkview Community Hospital. On April 26, 2010, Plaintiff reported to the hospital for upper abdominal pain. (Pl's Ex. A at 9).   The CT scan was negative. (Id.). Plaintiff's weight was down to three hundred and thirty-one pounds. (Id.).   On July 2, 2010, Plaintiff went to see Dr. Madhi for pain in her tailbone. (Pl's Ex. A at 12).   Plaintiff saw Dr. Madhi again for her tailbone on July 15, 2010. (Pl's Ex. A at 14).   On October 10, 2010, Plaintiff reported to Parkview Community Hospital for upper right quadrant pain and a rash on both hands. (Pl's Ex. A at 16).   Vicky N. Mai, M.D. suggested it was gastroenteritis. (Id.).   On her last visit of 2010, November 29, Plaintiff reported to Parkview Community Hospital with left ear pain. (Pl's Ex. A at 18).   Plaintiff was prescribed Cortisporin, an antibiotic, for her ear. (Id.).   Plaintiff weighed two hundred and ninety-one pounds. (Id.).

The newly submitted records also show three visits to Parkview Community Hospital in 2011. On February 3, 2011, Plaintiff met with Dr. Madhi for high blood pressure. (Pl's Ex. A at 20). Plaintiff also complained of diarrhea, caused by gastroenteritis, for three days. (Id.). Dr. Madhi stressed the importance of exercising for thirty to forty-five minutes most days of the week. (Id.). On February 10, 2011, Plaintiff was diagnosed with acute sinusitis. (Pl's Ex. A at 22). Plaintiff's weight was two hundred and eighty-seven pounds. (Id.). The last medical record is from April 14, 2011. (Pl's Ex. A at 24). Plaintiff was diagnosed with another upper respiratory infection, acute bronchitis. (Id.). Plaintiff's final weight reflected in the record was two hundred and eighty-three pounds. (Id.).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**THE ALJ'S DECISION**

On March 22, 2012, ALJ Duane D. Young issued a partially favorable decision, finding Plaintiff disabled from January 31, 2006 through December 31, 2008. (AR 506). The ALJ employed the five-step sequential evaluation process, (AR 494-95), and concluded that after December 31, 2007, Plaintiff was not disabled within the meaning of the Social

Security Act.  (AR 506).  At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset of Plaintiff's disability, January 31, 2006.  (AR 497). Next, the ALJ found that during the period of Plaintiff's disability, Plaintiff's severe impairments were asthma, obesity, diabetes mellitus, and right knee degenerative changes.  (Id.).  At step three, the ALJ found that the severity of Plaintiff's asthma met the criteria of Listing 3.03B of 20 C.F.R. Part 404, subpart P, Appendix 1 from January 31, 2006 to December 31, 2008.  (AR 497-499).  Accordingly, the ALJ found Plaintiff disabled during that time.  (AR 499).

The ALJ next considered whether Plaintiff's disability continued through the date of the decision, March 22, 2012.  (AR 492).  To determine whether Plaintiff's disability continued, the ALJ applied the medical improvement analysis from 20 C.F.R. § 416.994.  (AR 495).  The ALJ first determined that Plaintiff's severe impairments, subsequent to December 31, 2007, were the same as during the time of her disability. (AR 499).  Next, the ALJ considered Plaintiff's severe impairments, both singly and in combination, beginning January 1, 2008.  (AR 500).  The ALJ found that Plaintiff's severe impairments did not meet or medically equal the criteria of any medical listing.  (Id.).  Accordingly the ALJ found that medical improvement had occurred as of January 1, 2008 and that Plaintiff no longer met Listing 3.03B.  (Id.).

Finally, the ALJ found that, beginning January 1, 2008, Plaintiff had the residual functional capacity to perform sedentary work.  (Id.). The ALJ noted that Plaintiff was precluded from climbing ladders, ropes and scaffolds; could only occasionally balance, stoop, kneel, crouch,

14

crawl, push and pull with the right lower extremity, and climb ramps and stairs; must avoid concentrated exposure to workplace hazards, even moderate exposure to pulmonary irritants; and must have a sit and stand option.  (Id.).  The ALJ then determined that since January 1, 2008, Plaintiff was capable of performing her past relevant work as a telemarketer, receptionist or telephone operator. (AR 504).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

15

# VII.

## DISCUSSION

Plaintiff contends that the ALJ failed to consider all of the relevant medical evidence.  She also maintains that the ALJ improperly disregarded Plaintiff's subjective testimony.  Finally, Plaintiff argues that the ALJ failed to properly consider the relevant vocational evidence.  The Court disagrees with Plaintiff's contentions and finds that the ALJ's decision should be affirmed.

## A.    The ALJ Properly Considered The Relevant Medical Evidence

Plaintiff argues that the ALJ "arbitrarily determined without any supporting medical documentation that Plaintiff's asthmatic condition improved on January 1, 2008." (Plaintiff's Memorandum in Support of Complaint "Pl's MSC at 4).  Plaintiff further maintains that the new medical records, not seen by the ALJ, are material and should be considered. (Pl's MSC at 5). However, the ALJ properly considered the medical record, which is consistent with a finding of Plaintiff's improvement by January 1, 2008.  Moreover, remand for consideration of the new evidence is not required as the new evidence is not material.

Social Security regulations require the ALJ to consider all the relevant medical evidence when determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(b), 416.927(c).  One acceptable source of medical evidence is medical reports from licensed medical physicians.  20 C.F.R. § 1513(a),(b).  When considering medical reports, the ALJ must give the greatest weight to the opinion of the claimant's treating

16

physicians.  Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1222 (9th Cir. 2010).  If an ALJ rejects or ignores a treating physician's opinion, the ALJ must give specific reasons for doing so.  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011). Further, while the ALJ is required to develop and interpret the medical record, the ALJ is not required to discuss every piece of evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, the ALJ determined that Plaintiff was disabled from January 31, 2006 to December 31, 2007.  (AR 497-499).  At step three of the five-step inquiry, a claimant is considered disabled if they meet one of the statutory Listings.  20 C.F.R. §§ 404.1520, 416.920.  To meet the criteria of Listing 3.03B, a claimant must suffer from asthma attacks at least once every two months or at least six times a year, despite treatment.  20 C.F.R. Pt. 404, Subpt. P, AP. 1, 3.03B.  Hospitalizations of more than 24 hours count as two attacks.  Id.  After examining the record, the ALJ found that Plaintiff had at least six asthma attacks in 2006 and at least six asthma attacks in 2007.  (AR 498).  Therefore, the ALJ properly found that Plaintiff met the requirements of 3.03B. However, the medical record shows that after December 31, 2007, Plaintiff's hospitalization for asthma exacerbations ceased.

After December 31, 2007, Plaintiff saw her physicians for regular diabetes and hypertension follow-ups, a head wound, a knee injury, and a case of benign vertigo.  (AR 220, 331, 468, 470-77).  Plaintiff was not, however, hospitalized for asthma, nor did she receive any emergency treatment for asthma.  Plaintiff argues that although she did not receive any emergency treatment for asthma after January 1, 2008, she

did receive significant treatment in the form of an in-home nebulizer. (Pl's MSC at 4).   However, the lack of hospitalization shows that Plaintiff's in-home nebulizer use effectively controlled her asthma. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").   Furthermore, the ALJ considered Plaintiff's continued asthma condition in the improvement analysis.   The ALJ found that Plaintiff could perform only sedentary work and placed specific limitations on her exposure to pulmonary irritants.   (AR 500).   The absence of asthma complications in the record, such as emergency room visits, and hospitalizations after December 31, 2007 is a clear indication of Plaintiff's significant improvement.   Accordingly, substantial evidence in the record supports the ALJ's finding of medical improvement.

Plaintiff contends that the new medical records support her disability claim and should be included in the administrative record. (Pl's MSC at 5).   New evidence may be included in the record by remand for reconsideration under 42 U.S.C. § 405(g).   Under 42 U.S.C. § 405(g), remand for new evidence is warranted only if the new evidence is material.   New evidence is material if it bears directly and substantially on the matter in dispute and if there is a reasonable possibility that the new evidence would have changed the outcome of the determination.   Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010) (holding that when a claimant is awarded benefits on a second benefits application one day after the denial of benefits on a first application, remand is appropriate to determine whether medical evidence presented

18

in the second application would affect the outcome of the first).  Here, Plaintiff's new evidence is not material, and, if anything, adds further support to the ALJ's conclusion.

The new evidence consists of medical records from April 2009 to April 2011.  (Pl's Ex. A).  The new medical records fail to mention asthma attacks, home nebulizer use, or breathing problems, except those related to bronchitis and sinusitis.  The records show Plaintiff to be "well appearing" and "in no distress" and her lungs are generally described as clear.  (Pl's Ex. A at 4, 7, 8, 16, 18, 20, 22, 24). Additionally, Plaintiff's doctor visits during that time were all unrelated to asthma.  Instead, Plaintiff saw her physicians for tailbone pain, menstrual problems, ear pain and abdominal pain.  (Pl's Ex. A at 4, 6, 8, 12, 14, 18, 22, 24).   Furthermore, the records show that Plaintiff's weight dropped from four hundred and twenty-three pounds to two hundred and eighty-three pounds.  (Pl's Ex. A at 24).  In general, the new medical records show Plaintiff to be in substantially better health than she was in the earlier records presented to the ALJ. Accordingly there would be no change in the outcome even if the ALJ considered the new evidence and remand for consideration of the new evidence is not required.

**B.**   **The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Testimony**

Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her respiratory issues. In particular, Plaintiff maintains that the ALJ

improperly assessed Plaintiff's credibility regarding her use of the in-home nebulizer.  The Court disagrees.

When assessing the credibility of a claimant, the ALJ must engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  First the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  (Id.). Then, if there is, in order to reject the testimony, the ALJ must make specific credibility findings.  (Id.).  In assessing the claimants testimony, the ALJ may use "ordinary techniques of credibility evaluation." Turner, 613 F.3d at 1224 (internal quotations omitted). The ALJ may also consider any inconsistencies in the claimants conduct and any inadequately or unexplained failure to pursue treatment or follow treatment. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  Additionally, the ALJ may discredit the claimant's testimony where his normal activities can transfer to the work setting. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ applied the two-step analysis to Plaintiff's subjective testimony. (AR 502).  At the first step, the ALJ found that Plaintiff's impairments could reasonably lead to the alleged symptoms. (Id.).  However, the ALJ rejected Plaintiff's subjective testimony as to the "intensity, severity, and limiting effects" of her symptoms after January 1, 2008.  (Id.).  As required, the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.

First, the ALJ found that the "evidence submitted [did] not support the severity of symptoms alleged." (AR 501).  Plaintiff alleged that

she was incapable of sustaining full-time employment because of her asthma and nebulizer use, yet the medical record after January 1, 2008 shows minimal to no asthma complications.  The ALJ also found that Plaintiff "failed to follow treatment recommendations," noting that Plaintiff failed to take her medication on January 13, 2007.  (Id.). Additionally, the ALJ noted that "the lack of more aggressive treatment[,] surgical intervention or even a referral to a specialist suggest [Plaintiff's] symptoms were not as severe as alleged."  (AR 502).

The ALJ also relied upon Plaintiff's daily activities to reject her subjective testimony.  Plaintiff's daily activities included doing the laundry, helping with dishes, and grocery shopping when necessary. (AR 162-3).  The ALJ noted that many of Plaintiff's daily activities required physical and mental abilities that are "the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition."  (AR 502).  Further, the ALJ found that these daily activities undermined Plaintiff's credibility regarding allegations of disabling functional limitations.  (Id.).  The ALJ also found inconsistences in Plaintiff's testimony regarding activities she could perform.  (Id.).  For example, Plaintiff alleged shortness of breath and right knee pain, yet she stated in her questionnaire that she could walk a quarter of a mile. (AR 162).

Finally, at the hearing, the ALJ questioned Plaintiff's credibility in regards to her nebulizer use. The ALJ explicitly advised Plaintiff to retrieve records supporting the frequency of her in-home nebulizer

use.  (AR 502, 592, 594).  However, no such records were ever submitted
to the ALJ.  (AR 502).  The ALJ noted that the failure to obtain and
submit such pertinent evidence also suggests that Plaintiff's symptoms
and limitations were not as severe as alleged.  (Id.).

Rather than simply reject Plaintiffs subjective testimony, the ALJ
systematically stated reasons supported by the record for rejecting
Plaintiff's alleged degree of limitations.  Contrary to Plaintiff's
contention that the ALJ improperly disregarded Plaintiff's testimony,
the Court concludes that the ALJ presented clear and convincing reasons
for rejecting Plaintiff's subjective testimony.

## C.   **The ALJ Properly Considered The Relevant Vocational Evidence**

Plaintiff argues that the ALJ failed to properly consider the
relevant vocational evidence.  Plaintiff contends that the ALJ failed
to consider the Vocational Expert's ("VE") response to the third
hypothetical question.  The third hypothetical included the testimony
from the VE stating that the use of a nebulizer as frequently as
Plaintiff alleged would result in her inability to maintain employment.
(Pl's MSC at 13).  Plaintiff also maintains that the ALJ erred in
considering the job of receptionist as past relevant work.

As an initial matter, the ALJ posed three hypotheticals to the VE.
The first hypothetical described an individual exertionally limited to
light work activity and various other limitations.  (AR 589).  For the
second hypothetical, the ALJ asked the VE to consider an individual
limited to sedentary activity and with the other limitations described

above in the ALJ's findings.[3]  (AR 590).  This hypothetical accurately described Plaintiff's RFC and limitations, as found by the ALJ.  The third hypothetical added the limitation that the individual would be required to take a thirty-five minute break, in addition to lunch and normal breaks, to account for the frequency of Plaintiff's alleged nebulizer use.  (AR 591).

When an ALJ poses a hypothetical derived from the RFC to a vocational expert, the hypothetical must include all the limitations and restrictions of the particular claimant.  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  However, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

In making his decision, the ALJ properly relied on only the second hypothetical, which included all of Plaintiff's limitations and restrictions.  Plaintiff failed to present medical evidence supporting the frequency of her nebulizer use.  Plaintiff also failed to present any evidence demonstrating that she needed the nebulizer to the same extent as she did previously.  Further, as discussed above, the ALJ gave clear and convincing reasons for discrediting Plaintiff's subjective

---

[3]  The ALJ found Plaintiff was precluded from climbing ladders, ropes and scaffolds; limited to no more than occasional balancing, stopping, kneeling, crouching, crawling, and climbing ramps and stairs; must avoid concentrated exposure to workplace hazards; she must avoid even moderate exposure to pulmonary irritants; she is limited to no more than occasional pushing and pulling with the right lower extremity; and must have a sit stand option.  (AR 500).

testimony regarding her nebulizer use and the severity of her symptoms. Therefore the limitations posed in the ALJ's third hypothetical went beyond the limitations that the ALJ found Plaintiff to have. Accordingly the ALJ was free to disregard the VE's answer to the third hypothetical.

To support her claim, Plaintiff also argues that previous expert testimony stated that Plaintiff's need for nebulizer use during work hours would preclude her from employment. (Id.). However, the VE's testimony at the first hearing was based on a different set of additional limitations that were no longer present. Compare (AR 37-38) with (AR 589-90). Here, the ALJ in relied only on those limitations that he found at the second hearing, which did not include the same degree of nebulizer use,[4] and properly included those limitations in the second hypothetical question posed to the VE. Accordingly, the ALJ did not err in disregarding the VE's answer to the third hypothetical question.

Similarly, Plaintiff argues that the ALJ failed to discuss how talking allegedly exacerbated Plaintiff's asthma. Because all of the occupations the ALJ identified as past relevant work included frequent talking, Plaintiff claims that the ALJ erred in failing to properly consider her talking limitation. (Id.). As the only evidence in support of this limitation was Plaintiff's own testimony,  and the ALJ made specific credibility findings rejecting Plaintiff's subjective

---

[4]   As the ALJ noted, he requested documentation to support Plaintiff's allegations regarding nebulizer use, but no documents were submitted. (See AR 502).

testimony, the ALJ was free to reject those limitations which were not supported by the remainder of the record.   Thus, the ALJ was not required to consider the Plaintiff's subjective testimony regarding asthma exacerbations due to talking, as the record failed to support these limitations.

Finally, Plaintiff contends that the ALJ's conclusion that Plaintiff could perform past relevant work as a receptionist is not supported by substantial evidence.  Specifically, Plaintiff maintains that her job as a receptionist never rose to substantial gainful activity. (Pl's MSC at 12).  This argument fails on two grounds.

The record shows that the job of receptionist qualifies as past relevant employment for Plaintiff.   Past relevant employment is employment within the past fifteen years that amounted to substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. 404.1560.  Substantial gainful activity is activity that involves significant mental or physical activities and is done for pay or profit.   20 C.F.R. § 404.1572(a),(b).   One indication of substantial gainful activity is the claimant's earnings.   Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001).  Generally earnings over seven hundred dollars a month is evidence that the claimant has  engaged in substantial gainful activity.  20 C.F.R. § 404.1574(b)(2).

In her disability application, Plaintiff says she worked as a receptionist between 1998 and 2003.  (AR 130).   Although one receptionist position only lasted a few months, the other, titled "receptionist/operator" was her longest, best paying job. (AR 135).

During that time, Plaintiff earned $13,598.29 in 2000, $11,108.56 in 2001 and $12,547.93 in 2002. (AR 709). Plaintiff's earnings as a receptionist over this three-year period average well over the statutory guidelines, indicating that her work as receptionist was substantial gainful activity. Therefore, it was proper for the ALJ to consider Plaintiff's position of receptionist as past relevant work.

Even if considering the job of receptionist as past relevant work was error, it was harmless error and does not require remand. "An ALJ's error is harmless when it is inconsequential to the ultimate nondisability determination." Molina, 674 F.3d at 1115 (internal citations and quotations omitted). Here, the ALJ found that not only could Plaintiff perform her past relevant work as a receptionist, but also as a telemarketer and a telephone operator. (AR 504). If the ALJ erred in finding the job of receptionist was past relevant work, he nevertheless found two other jobs within Plaintiff's RFC that Plaintiff could perform and Plaintiff does not contend these two positions did not result in substantial gainful activity. As such, if the conclusion about the receptionist position was error, it was harmless error.

In sum, the ALJ properly included all of Plaintiff's limitations in the hypothetical he relied upon. The ALJ also properly considered the job of receptionist as past relevant employment, and even if such consideration was error, it was harmless error. Accordingly, Plaintiff's final claim that the ALJ failed to consider the relevant vocational evidence fails.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 11, 2013

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[5]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."